IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LANNY DEAN CAMPBELL, | ) | |
| ID # 01711835, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:14-CV-1675-K (BH) |
| | ) | |
| LORIE DAVIS,[1] Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

Lanny Dean Campbell (Petitioner) challenges his conviction for murder in Cause 26517. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

### A. Trial and Appeal

On May 28, 2010, the State indicted Petitioner for murder. (Doc. 12-20 at 22.)[2] He pleaded not guilty and was tried before a jury in the 196th Judicial District Court of Hunt County, Texas, on March 21-25, 2011. (Docs. 12-7 at 3, 12-20 at 7.)

The evidence of the murder at trial was summarized by the state appellate court as follows:

There was no dispute that [Petitioner] had shot and killed James Michael McKinnis [(the

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

victim)]. . . . [Petitioner] testified that [the victim] shoved him in his living room during an argument, throwing him "down on the ground into [a] toolbox." [Petitioner] became scared and went to his bedroom to retrieve a gun. [Petitioner] testified that he took "a shell out of [the gun] to make sure it had one in the chamber, and I fired one through the floor as a warning to him to get the hell out of my house." [Petitioner] stated that when he went back to the living room, [the victim] "started coming towards me, and I told him to leave one more time. And he kept coming and I shot him in the foot. And then he started reaching for me and coming again, and I raised it higher and shot, and he still was reaching for my gun, and I shot again."

The jury also heard a substantially different version of events from that to which [Petitioner] testified. [Petitioner's daughter][3] testified that [Petitioner] was the first aggressor. According to [the daughter,] [the victim] was asking [Petitioner] why he was being instructed to leave. In response, [the daughter] testified "my dad pushed him and [the victim] said, Well, we can take this outside like real men if you want to, but I don't want to. My dad said I can handle this." [The daughter] told the jury that [s]he never saw [the victim] push [Petitioner]. [The daughter] remembered [the victim] "heading down the steps and I was behind him ... I remember ... my dad opening the door and I remember gunshots." [The victim's] body was found in the front yard.

[The daughter's] version of events was confirmed by eyewitness Brian Stanley. Stanley said that [Petitioner] and [the victim] engaged in an argument, [the victim] did not shove [Petitioner], and [the victim] left the argument by exiting through the door. Stanley expounded further, saying that [Petitioner] "came outside" and started shooting at [the victim].

*Campbell v. State*, 2012 WL 28821, No. 06-11-00082-CR, slip op. at *1, 4, 5 (Tex. App.–Texarkana, January 6, 2012).

According to Stanley, Petitioner was upset because the victim brought Keith Edwards into Petitioner's home. (Doc. 12-7 at 39.) When Petitioner came outside to the porch where the victim was, Stanley heard the victim say, "So you're going to shoot me." (*Id*. at 40.) Stanley heard two gunshots. (*Id*.) The victim said, "Stop shooting me," and then Stanley heard "a couple more gunshots." (*Id*.) The victim was on the top step of the porch when the shooting started. (*Id*. at 43.)

A 911 call was received at 11:44 p.m. (Doc. 12-8 at 23.) Deputy Sheriff Keith Short was

---

[3] Although the appellate court identifies Jordan Campbell as Petitioner's son, she is actually his daughter.

the first officer on the scene at 11:53 p.m. (*Id*.) When he arrived, Petitioner came to the door and said he was the one who did it. (Doc. 12-7 at 46.) Petitioner did not tell Short it was self-defense, and no one at the scene said it was self-defense. (*Id*. at 52.)

Sheriff's Investigator Jeff Haines arrived at the scene, which had been cordoned off. (Doc. 12-8 at 3.) He interviewed witnesses. (*Id*. at 4.) A judge signed a search warrant at 4:17 a.m., he was notified at approximately 4:30 a.m., and he began processing the crime scene. (*Id*. at 4, 36.) Law enforcement officers Short, Haines, Kenneth Peters, and Ed Sneed had previously entered the residence at some point before a search warrant was obtained. (Doc. 12-9 at 12-13.)

The porch was about four or five feet wide from the front door to the top of the steps leading down to the yard. (Doc. 12-7 at 21.) There were four steps from the porch down to the yard. (Doc. 12-8 at 6.) There were no blood stains or drops on the front porch or steps. (*Id*. at 10.) Two spent ejected shell casings were found inside the house in the entryway to the living room near a wall that faces the front door. (*Id*. at 10, 20.) There was also a spent shell casing in the master bedroom. (*Id*. at 11.) A fourth shell casing was found jammed in the rifle. (*Id*. at 38.) Officers did not find any bullet hole in the floor of the residence. (Doc. 12-9 at 11.)

The victim suffered four gunshot wounds. (*Id*. at 43.) One was in the left foot. (*Id*. at 44.) A bullet entered his back and lodged in the anterior abdominal wall, another the bullet entered the lower back and ended up in the upper chest area, and another entered the upper chest. (*Id*. at 44-45.)

During cross-examination of Sheriff's Investigator Roger Seals, counsel asked, "Isn't it true, Mr. Seals, that when asked to talk to the law enforcement authorities, my client invoked his constitutional right to and asked to have his attorney?" Seals said that was correct. Counsel asked, "You don't have a problem with the Constitution, do you?" Seals said no. (Doc. 12-8 at 33.)

During cross-examination, Lieutenant Grandfield of the Sheriff's Office testified that Petitioner told him in a custodial interrogation that the victim pushed him, and that Petitioner did not have an attorney when he made that statement. (Doc. 12-9 at 11-12.)

The jury found Petitioner guilty and sentenced him to 35 years' imprisonment. (Doc. 12-20 at 90.) On direct appeal, Petitioner alleged that the trial court failed to include a definition of the term "preponderance of evidence" regarding the issue of sudden passion, and that counsel was ineffective for eliciting testimony about Petitioner's invocation of his right to counsel. *Campbell*, slip op. at *1. His conviction was affirmed. *Id.*

## B.      <u>State Habeas Proceedings</u>

Petitioner filed a petition for discretionary review (PDR) on March 30, 2012, and it was refused. *Campbell v. State*, PD-0145-12 (Tex. Crim. App. July 25, 2012). He did not file a petition for writ of certiorari with the Supreme Court. Petitioner's state habeas application was signed on January 31, 2013, and it was received by the state court on February 12, 2013. (Doc. 12-30 at 6, 17.) The state habeas court forwarded the habeas record to the Texas Court of Criminal Appeals without making findings. (Doc. 12-30.) On April 17, 2013, the Court of Criminal Appeals remanded the matter to the state habeas court to resolve fact issues regarding the claims of ineffective assistance of counsel. (Doc. 12-35.) The Court of Criminal Appeals noted in its remand order that Petitioner's other claims lacked merit. (*Id.* at 2 n.1.) On July 1, 2013, the state court conducted an evidentiary hearing. (Doc. 12-33.)

At the state habeas hearing, the daughter testified that at trial she was "high on drugs. Pills, meth and my mind wasn't clear and I didn't remember a lot and I was nervous." (Doc. 12-33 at 17.) She said she told trial counsel that "[the victim] did push my dad, but I – they probably contradicted

what I said and it made me feel like what I was saying was wrong because it happened a lot during – during the trial." (*Id*. at 17-18.)  She said she probably told the investigator that the victim pushed Petitioner.  (*Id*. at 19.)  She again testified that she was contradicted "by every person that's asked me that.  I know if I did say it, which I'm probably sure I did, I even asked my mom.  She's probably sure that I did, too.  But I'm almost positive that I said it.  But every time I would say something, they would question me and I would feel like what I was saying was wrong so I was unsure about a lot of it.  Particularly that." (*Id*.)  She testified at the hearing that the victim did push Petitioner. (*Id*. at 22.)  She said she told counsel and the investigator that the victim sometimes carried a gun and was good at kickboxing.  (*Id*. at 22-23.)  She did not tell them that he bonded out of jail a week or two prior to trial, but she thought they should have known that.  (*Id*. at 23-24.)  She thought she gave them a written statement, but it probably did not state that the victim pushed Petitioner.  (*Id*. at 25-26.)  The statement she gave to the law enforcement officers did not state that the victim pushed Petitioner.  (*Id*. at 28, 29.)  She did not remember telling her uncle, Bob Massey (the uncle), in a recorded conversation that the victim pushed Petitioner.  (*Id*. at 32-33.)[4]

Counsel testified that he did not cross-examine the daughter with her statement because he did not think the essence of it was inconsistent with her trial testimony.  (Doc. 12-33 at 50.)

> . . . I had an opportunity to hear her testimony and to watch how she presented her testimony.
>
> And I determined what I thought would be the most effective way to address her in front of a jury without appearing to attack her, considering that this was awhile back, she obviously as you can see today is very youthful, she was years younger at that time.  She gave a story that was inconsistent with the physical evidence.  She talked in terms of that she was pushing [the victim] out the door and that she,[the daughter], was between her dad and [the victim], which had to be wholly inconsistent with the physical evidence.

---

[4]The uncle's two affidavits stated that he gave counsel a videotape recording of the daughter.  (Doc. 12-32 at 20, 21.)

And I determined that to attack her would – would have potential negative consequences and no desire to have the jury mad at me or [Petitioner] as result of attacking this teenager when her testimony wasn't that damning and it was inconsistent with the physical evidence anyway.

…

And finally, there was testimony by one of the detectives that described [the daughter] as – the description included the words – she was acting very much like a drama queen.

(*Id*. at 50-51.)  He did not try to impeach the daughter with her recorded interviews with the police:

[T]rial strategy as to how to cross examine a teenage witness, who was the daughter of my client, without it causing an adverse reaction from the jury, either mad at me because I was being too tough on a kid or the reflection that after all, she is [Petitioner's] daughter that – without making it look like this is the kind of kid he raised.

…

The primary reason is based upon the testimony that she gave on direct examination from the district attorney in front of the jury and in my evaluation as to the effect it did or did not have on the jury in my professional opinion.

(*Id*. at 56-57.)[5]

Counsel testified that the uncle may have furnished him with a taped interview of the daughter. (*Id*. at 52, 54.)  He did not recall receiving a tape recording in which she admitted she lied to the police.  (*Id*. at 76.)  She did not tell him that the victim pushed Petitioner, which would have been significant.  (*Id*. at 68.)  Counsel did not remember whether he knew at trial that the daughter had been arrested, but he said he could not have impeached her with an arrest without a conviction. (*Id*. at 51.)  When he spoke with her, she appeared like she could have been "on some substance" or caught up in the drama.  (*Id*. at 52.)

Counsel also testified that there were no uncalled witnesses requested by Petitioner.  (*Id*. at

---

[5]Counsel's affidavit stated that he decided "not to gratuitously 'trash' [the daughter] in cross-examination because of the potential perception by the jury of lousy parenting by the Defendant and how that might subsequently affect Defendant's credibility and decision making in the eyes of the jury." (*Id*. at 8.)

57.)

Counsel testified about his challenge to the legality of the search:

I was playing both sides against the middle.  [B]ased on my experience, I have very little confidence that a jury was going to find that the police had made some kind of error. . . . On the other hand, the physical evidence was very critical to the defense.  And the reason for that was there were a number of spent shell casings and I felt that it was critical that the jury know and they heard . . . from law enforcement where the shell casings were found, it was critical in my opinion for them to know where those were found and that they were found inside the house and that [Petitioner] did not chase [the victim] outside and shoot him in the back, that the shots were fired in the house consistent with our – our position with regard to the Castle Law and self defense.  And that contradicted the testimony of [the daughter] that she had [the victim] outside and that she was between the two of them out on the front porch because the shell casings were found in the interior of the house.

(*Id*. at 59-60.)

Kenneth Peters testified that he and another officer responded to the scene and secured the scene.  (*Id*. at 40.)  They waited outside until investigators arrived with a search warrant.  (*Id*. at 40-41.)  They then searched the house with the investigators.  (*Id*. at 41.)  Peters did not seize any evidence.  (*Id*.)

The state habeas court issued findings of fact and conclusions of law on July 16, 2013.  (Doc. 12-31 at 31-39.)  On October 30, 2013, the state habeas application was denied without written order on the findings of the trial court after the hearing.  (*Id*. at 2.); *see Ex parte Campbell*, WR-79,278-01 (Tex. Crim. App. Oct. 30, 2013).

## D.  **Substantive Claims**

On April 9, 2014, Petitioner mailed his federal habeas petition raising the following grounds for relief:

(1) The evidence was factually and legally insufficient to support the conviction (ground one);

(2) His trial attorney provided ineffective assistance of counsel by:

-failing to present witnesses requested by Petitioner;

-failing to impeach the testimony of his daughter and Brian Stanley;

-failing to present a videotape of his daughter lying about her statement to the police;

-suggesting to the jury that Petitioner was guilty of murder because he requested an attorney; and

-failing to develop the fact that his house was searched before a warrant was obtained (ground two);

(3) The prosecutor knowingly used perjured testimony (ground three);

(4) The court's charge to the jury at the punishment phase violated his right to due process (ground four);

(5) The evidence was illegally obtained (ground five);

(6) The court lacked jurisdiction (ground five).

(Docs. 3 at 6-8, 4 at 4-10.)  Respondent filed a response on July 3, 2014, and provided the state court records.  (Doc. 9.)  Petitioner filed additional documents in support of his federal petition on July 8, 2014, and he filed a reply brief on August 1, 2014.  (Docs. 11, 13.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless

9

they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  SUFFICIENCY OF EVIDENCE

In his first ground, Petitioner asserts the evidence was factually and legally insufficient to support the conviction.  He contends he testified he shot the victim in fear for his life, that the state's witnesses were not credible, and that his daughter testified falsely.

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979).[6]  In *Jackson*, the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 320.  Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts.  *Id*.  Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review."  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  "Determining the weight and credibility of the evidence is within the sole province of the jury."  *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).  Courts view "any required

---

[6] To the extent Petitioner claims that the evidence is factually insufficient to support his conviction, this claim is not cognizable in a federal habeas action.  *See Spencer v. Dretke*, No. 3:02–CV–1988–D, 2005 WL 696719, at *4 n. 2 (N.D. Tex. Mar. 23, 2005), *rec. accepted*, 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).

credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir.1999).

Petitioner was convicted of murder by intentionally or knowingly causing the death of the victim by shooting him with a firearm. (*See* doc. 12-20 at 22, 82); *see also* Tex. Penal Code § 19.02(b)(1) ("[a] person commits an offense if he . . . intentionally or knowingly causes the death of an individual"); *Torres v. State*, 343 S.W.3d 297, 299-300 (Tex. App.—Eastland 2011) (setting out elements of murder under § 19.02(b)(1)). "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). "A person is justified in using deadly force against another if the actor would be justified in using force against the other" and "when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." *Id*. § 9.32(a); *see Moralez v. State*, 450 S.W.3d 553, (Tex. App.—Houston [14th Dist.] 2014) (setting out statutory provisions for self-defense by use of deadly force). " 'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42).

The evidence set out in the state appellate court's opinion contradicted Petitioner's testimony that he acted in self-defense. There was evidence that the victim was walking out of the house and was on the porch and leaving when Petitioner shot him. The jury was the fact-finder responsible for

weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view

of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

The State presented evidence at trial from which a jury could have reasonably concluded that

Petitioner murdered the victim, and that he did not act in self-defense.

Petitioner has not shown that the state court's rejection of this claim was an unreasonable

application of federal law or an unreasonable determination of the facts.  This ground for relief

should be denied.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his second ground, Petitioner claims that his trial counsel was ineffective by (1) failing

to present witnesses that he requested; (2) failing to impeach the testimony of his daughter and Brian

Stanley; (3) failing to present a videotape of his daughter lying about her statement to the police; (4)

suggesting to the jury that Petitioner was guilty of murder because he requested an attorney; and (5)

failing to develop the fact that his house was searched before a warrant was obtained.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for

his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the

effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668

(1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective

assistance of counsel, a movant must show (1) that counsel's performance was deficient and (2) that

the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's

performance was constitutionally effective. *See* 466 U.S. at 696.  The Court may address the prongs

in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Movants must "affirmatively prove prejudice."  *Id.* at 693.  The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A.  **Uncalled Witnesses**

Complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative.  *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir.

13

2009).  To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Day*, 566 F3d at 538; *Alexander*, 775 F.2d at 602.

Counsel testified at the state habeas hearing that there were no witnesses requested by Petitioner whom he did not present.  (Doc. 12-33 at 57.)  The state habeas court found that Petitioner did not provide counsel the names of any additional witnesses.  (Doc. 12-31 at 33.)

Petitioner has not identified any additional witnesses that he requested.  Nor has he shown that the witnesses were available and willing to testify, and that the substance of their proposed testimony would have been favorable.  He has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts.  This ground for relief should be denied.

**B.**     **Impeachment**

Petitioner contends counsel failed to impeach his daughter and Brian Stanley with their prior inconsistent statements to the police.

Petitioner does not explain how Stanley's statement to the police differed from his trial testimony for purposes of impeachment.  His claim regarding the failure to impeach Stanley is conclusory and does not provide a basis for relief.  *See Woods*, 870 F.2d at 288 n.3.

As for the daughter, counsel testified at the state habeas evidentiary hearing about his strategy for not attempting to impeach her.  (Doc. 12-33 at 50-51, 52, 59-60.)  The state habeas court found that counsel may have been aware of inconsistent statements given by the daughter to law

14

enforcement, but he chose to incorporate her direct examination testimony into his trial strategy rather than impeach her. (Doc. 12-31 at 33.) He was faced with a dilemma because impeaching the daughter would have reflected poorly on Petitioner, since he was responsible for raising her, and it would alienate the jury due to her youthful age. (*Id*.) Her testimony was inconsistent with the physical evidence, which he used to support the use of deadly force. (*Id*. at 37-38.) Counsel attempted to show her testimony was incorrect because it was not consistent with the physical evidence, and he emphasized that point in jury argument. (Doc. 12-10 at 7.)

Petitioner has not overcome the presumption that counsel's decisions about impeachment was based on sound trial strategy. He has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts. This ground for relief should be denied.

## C.     <u>Videotape of the Daughter</u>

Petitioner contends counsel failed to present a videotape of his daughter in which she stated she lied to the police.

The state habeas court found that the uncle gave counsel a recording of the daughter before trial. (Doc. 12-31 at 32.) Neither counsel nor his investigator were made aware that she saw the victim assault Petitioner prior to the shooting. (*Id*.)

Petitioner has not shown that the video recording contained any admission by his daughter that she lied to the police. Additionally, at the state habeas hearing, counsel testified that her uncle may have furnished him with a taped interview of her, but counsel did not recall that she admitted on the tape that she lied to the police. (Doc. 12-33 at 52, 54, 76.) He said that the daughter did not tell him that the victim pushed Petitioner. (*Id*. at 68.) The daughter testified at the state habeas

hearing that the statement she gave to the law enforcement officers did not state that the victim

pushed Petitioner.  (*Id*. at 28, 29.)  She did not remember telling her uncle in a recorded conversation

that the victim pushed Petitioner.  (*Id*. at 32-33.)  The uncle's affidavits did not state that she said

she lied to the police or that she said the victim pushed Petitioner.  (Doc. 12-32 at 20, 21.)

Petitioner has not shown the state court's rejection of his claim was an unreasonable

application of federal law or an unreasonable determination of the facts.  This ground for relief

should be denied.

**D.**      **Petitioner's Request for an Attorney**

Petitioner contends counsel suggested he was guilty because he requested an attorney.

At the scene, Petitioner told Deputy Short that he was the one who killed the victim, but he

did not say it was in self-defense.  (Doc. 12-7 at 46, 52.)  On cross-examination of Investigator

Seals, counsel brought out that when Petitioner was asked to talk to law enforcement authorities, he

invoked his constitutional right to an attorney.  (Doc. 12-8 at 33.)  Later, on cross-examination of

Lieutenant Grandfield, counsel brought out that Petitioner told Grandfield in a custodial

interrogation that the victim pushed him, and that Petitioner did not have an attorney when he made

that statement.  (Doc. 12-9 at 11-12.)

This issue was raised on appeal.  *Campbell*, 2012 WL 28821 at *5-7.  The appellate court

noted that counsel raised an issue for the jury regarding the legality of the search.  *Id*. at 6.  It held:

> It could have been counsel's trial strategy to hint to the jury that the officers were not
> following the constitutional playbook.  Counsel could have believed that the jury
> might think if the investigators had ignored [Petitioner]'s right to counsel, perhaps
> they also obtained evidence in violation of the Constitution during the search.
> Counsel also could have sought to challenge the credibility of the officers and
> investigators through this line of questioning.  Absent a record explaining counsel's
> reasoning, we will not second-guess the strategy of [Petitioner]'s counsel at trial
> through hindsight.

16

*Id.* at 6.   Regarding the prejudice prong, the appellate court held, "Grandfield admitted that the substance of the statement made by [Petitioner], at a time when he did not have an attorney present, included a version of events that he had been 'pushed down by [the victim].'   This testimony substantiated the self-defense claim."   *Id.*   The court held that Petitioner did not establish the prejudice prong.   *Id.*

Petitioner has not overcome the presumption that counsel actions were based on sound trial strategy.   He has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts.   This ground for relief should be denied.

**E.**   **Illegal Search**

Petitioner contends that counsel failed to develop the fact that his house was searched before a warrant was obtained.

Contrary to this claim, counsel brought out that several law enforcement officers entered the house before the search warrant was issued.   (Doc. 12-9 at 12-13.)   The jury was instructed to disregard evidence obtained by a constitutional violation.   (Doc. 12-20 at 80.)   Counsel argued that the entry into his home before a search warrant issued was illegal.   (Doc. 12-9 at 5-6.)

Petitioner has not presented evidence to show that law enforcement officers searched his house when they entered or that they collected physical evidence or observed items that enabled other officers to obtain a search warrant.   The only law enforcement officer who testified at the state habeas hearing, Kenneth Peters, said that he entered the home after investigators arrived at the scene with a search warrant, and that he did not collect any physical evidence.   (Doc. 12-33 at 40-41.)   The state habeas court so found.   Additionally, at the state habeas hearing, counsel explained that

although he wanted to raise the search issue, he also wanted the jury to consider the physical evidence found in the search pursuant to the search warrant because he believed it supported the self-defense theory.  (Doc. 12-33 at 59-60.)

Petitioner has not shown what more counsel should have done regarding the search issue. Also, he has not overcome the presumption that counsel actions were based on sound trial strategy. He has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts.  This ground for relief should be denied.

## V.  ALLEGED PERJURED TESTIMONY

Petitioner contends in his third ground that the prosecutor knowingly used perjured testimony from his daughter.  In his reply, he also asserts the prosecutor knowingly used perjured testimony from Brian Stanley.  He claim that their testimony was inconsistent with prior statements, and that they had motive to lie.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) that it was material.  *Napue*, 360 U.S. at 271.  Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  *Napue*, 360 U.S. at 271.

Petitioner has failed to establish that the testimony of Stanley and his daughter was false or that the prosecutor knew it was false.  Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements or testimony of other witnesses do not establish perjury.  *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).  Conflicting testimony is to be resolved by the jury.  *See Koch*, 907 F.2d at 531.

He has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts.  This ground for relief should be denied.

## VI.  JURY CHARGE

Petitioner contends in his fourth ground that the jury charge at the punishment phase violated his right to due process, because it did not define "preponderance of the evidence" and "sudden passion arising out of an adequate cause."

To warrant federal habeas relief on the basis of a violation of due process due to an error in the trial court's instructions to the jury, the court must find that the jury charge error rendered the entire trial fundamentally unfair.  *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir.1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154–55 (1977)).  The question is whether the alleged invalid instruction "by itself so infected the entire trial that the resulting conviction violated due process, not merely if the instruction was undesirable, erroneous, or universally condemned." *Wright v. Director*, TDCJ, No. 9:11–CV–204, 2012 WL 7159911, at * 20 (E.D. Tex. Oct.2, 2010) (citing *Henderson*, 431 U.S. at 155)), *rep. and rec. adopted*, 2013 WL 607850 (E.D. Tex. Feb.19, 2013).

The jury received an instruction regarding Texas Penal Code § 19.02(d), which provides, "At

the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from adequate cause."  "If the defendant proves the issue [of sudden passion] in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree."  *Id.*

Contrary to Petitioner's claim, the jury instructions included definitions of "adequate cause" and "sudden passion."  (Doc. 12-20 at 87.)  Petitioner does not contend those definitions were incorrect.  He has not shown he is entitled to relief on this part of his ground.

Petitioner raised a claim on appeal about the lack of a definition of "preponderance of the evidence."  *Campbell*, 2012 WL 28821 at *1-5.  He did not request an instruction on the definition of "preponderance of the evidence."  The appellate court overruled his ground.  The court reasoned that the definition of "preponderance of the evidence" is a common-sense one, and that a jury does not need to be provided a definition in the jury instructions.  *Id.* at *3.

The appellate court further held that even if there were error, Petitioner was not egregiously harmed, reasoning that:

> The jury charge itself required the jury to "determine by a preponderance of the evidence whether or not [Petitioner] caused the death under the immediate influence of sudden passion arising from an adequate cause." The proper definitions of sudden passion and adequate cause as defined by statute were provided, and the application paragraph of the charge was proper.

> During the arguments of counsel, the State erroneously told the jury that it was [Petitioner]'s burden to prove sudden passion "beyond the preponderance of the evidence." However, [Petitioner]'s counsel emphasized the proper standard:

> Now, I do want to address this special issue on page 5. And the first thing that I would like to make sure you understand—because this is different, and it's not explained to you, I don't believe, anywhere else in here. It says, You must determine by a preponderance of the evidence.

> ... the burden of proof is by a preponderance of the evidence and that means that you

find that the evidence that you received proved a little bit more one way or the other, not beyond a reasonable doubt, not clear and convincing, but preponderance of the evidence.

Now, Mr. Lilley misspoke when he said beyond a preponderance of the evidence, and that would be easy to do because we have been talking about beyond a reasonable doubt all week, but look at the words here "by a preponderance of the evidence."

...

By rejecting [Petitioner]'s self-defense issue raised during the guilt/innocence phase, the jury indicated its disbelief in [Petitioner]'s story. In line with its previous rejection of self-defense, the jury could have decided that [the victim] did not provoke [Petitioner] in a manner that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render them capable of cool reflection.

Considering the jury charge, arguments of counsel, the record in this case, and [Petitioner]'s thirty-five-year sentence, we hold that [Petitioner] has failed to show that he was egregiously harmed as a result of the alleged jury charge error.

*Campbell*, 2012 WL 28821 at \*3-5.

Petitioner has not shown the state court's rejection of his claim was an unreasonable application of federal law or an unreasonable determination of the facts. This ground for relief should be denied.

## VII.  ILLEGAL SEARCH

Petitioner contends in his fifth ground that the evidence was obtained by a search of his home without a warrant in violation of his rights under the Fourth Amendment.

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). If a state has a process that allows

an opportunity for full and fair litigation of Fourth Amendment claims, federal habeas review of those claims is barred, even if a defendant did not use the state process to litigate the claims. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). The State of Texas does have a process that allows defendants to litigate Fourth Amendment claims at the trial level and on direct appeal. *Register*, 681 F.3d at 628.

Here, Petitioner raised his Fourth Amendment claims at the trial level through the submission of the matter to the jury, and at the state habeas level. This ground is therefore barred from federal habeas review.

## VIII.  TRIAL COURT'S JURISDICTION

Petitioner's fifth ground also contends the trial court lacked jurisdiction because he was tried in the 196th Judicial District Court of Hunt County, Texas, but the offense occurred at his home in Van Zandt County.

An EMS technician testified that the home was in Hunt County. (Doc. 12-7 at 33.) Petitioner's claim is conclusory, and he does not show he is entitled to relief. *See Woods*, 870 F.2d at 288 n.3. This ground for relief should be denied.

## IX.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## X.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

22

**SO ORDERED** this 5th day of August, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE